IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

| | |
|---|---|
| **LISHA M. WALKER,** | |
| Plaintiff, | |
| v. | **CIVIL ACTION NO.: 1:17-CV-63 (KEELEY)** |
| **NANCY A. BERRYHILL,**<br>**Acting Commissioner of Social Security,** | |
| Defendant. | |

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

This case arises from the denial of Plaintiff Lisha M. Walker's ("Plaintiff") Title II application for a period of disability and disability insurance benefits ("DIB") and a Title XVI application for supplemental social security income ("SSI"). After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("the ALJ") concluded that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). Now, Plaintiff seeks judicial review of the ALJ's decision. Because the ALJ's decision to deny Plaintiff's claim for DIB and SSI is supported by substantial evidence, the undersigned recommends that Plaintiff's Motion for Summary Judgment be denied and Defendant's Motion for Summary Judgment be granted.

### II.   PROCEDURAL HISTORY

In July 2013, Plaintiff filed a claim for DIB and SSI, alleging that her disability began on February 8, 2008. R. 243–45. Plaintiff later amended her alleged onset date

to February 1, 2012. R. 20, 259. Plaintiff's claims were denied initially, R. 180–87, and on reconsideration, R. 192–97. After these denials, Plaintiff filed a written request for a hearing before an ALJ. R. 198–99. On January 5, 2016, a hearing was held before the ALJ in Morgantown, West Virginia. R. 20, 37–85. Plaintiff, represented by counsel Travis M. Miller, Esq., and Larry A. Bell, an impartial vocational expert, appeared in person. R. 20. Approximately two months later, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act. R. 20–31. On February 21, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of Nancy A. Berryhill, the Acting Commissioner of Social Security ("the Commissioner"). R. 1–4.

On April 21, 2017, Plaintiff, through counsel, filed a Complaint in this Court to obtain judicial review of the Commissioner's final decision pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) (2015). Compl., ECF No. 1. The Commissioner, through counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed her Answer and the Administrative Record of the proceedings on June 28, 2017. Answer, ECF No. 6; Admin. R., ECF No. 7. Soon thereafter, Plaintiff and the Commissioner filed their Motions for Summary Judgment and their supporting briefs on July 28, 2017, and September 5, 2017, respectively. Pl.'s Mot. Summ. J., ECF No. 10; Def.'s Mot. Summ. J., ECF No. 14. Plaintiff then filed a response to the Commissioner's supporting brief on September 18, 2017. Pl.'s Resp. Def.'s Mot. Summ. J., ECF No. 16.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the

administrative record, the undersigned now issues the following Report and

Recommendation.

### III.    THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following

criteria:

> [The] individual . . . [must have a] physical or mental
> impairment or impairments . . . of such severity that he is not
> only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific
> job vacancy exists for him, or whether he would be hired if
> he applied for work. . . . '[W]ork which exists in the national
> economy' means work which exists in significant numbers
> either in the region where such individual lives or in several
> regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Social Security Administration uses the

following five-step sequential evaluation process to determine whether a claimant is

disabled:

> (i) At the first step, we consider your work activity, if any. If
> you are doing substantial gainful activity, we will find that you
> are not disabled.
>
> (ii) At the second step, we consider the medical severity of
> your impairment(s). If you do not have a severe medically
> determinable physical or mental impairment that meets the
> duration requirement [of twelve months] . . . or a combination
> of impairments that is severe and meets the duration
> requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of
> your impairments(s). If you have an impairment(s) that
> meets or equals one of our listings . . . and meets the
> duration requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity [("RFC")] based on all the relevant medical and other evidence in your case record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920 (e).

> (iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). In steps one through four, the burden is on the claimant to prove that he or she is disabled and that, as a result of the disability, he or she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d 802, 804 (4th Cir. 1978). Once the claimant so proves, the burden shifts to the Commissioner at step five to demonstrate that jobs exist in the national economy that the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). If the claimant is determined to be disabled or not disabled during any of the five steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

## IV. ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2012, the date of alleged onset. R. 23. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: personality disorder, with cluster B traits; borderline personality disorder; obsessive-compulsive disorder; generalized anxiety disorder; panic

4

disorder with agoraphobia; major depressive disorder; psychotic disorder, with histrionic, avoidant, and borderline features; eating disorder; and obesity. R. 23–24. At the third step, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meet or medically equal the severity of one of the listed impairments. R. 24–26. Then, the ALJ determined that Plaintiff has "the [RFC] to perform light work," but with the following limitations:

> [T]he claimant can perform postural movements occasionally, except never climb ladders, ropes or scaffolds; work should not require greater than occasional exposure to concentrated levels of extreme temperatures, vibration, fumes, dusts, odors or pulmonary irritants; work should not require exposure to a noise intensity level above the "moderate" level as that term is defined in the Selected Characteristics of Occupations; work should never require exposure to unprotected heights or moving mechanical parts; work should be limited to no higher than SVP 2, performed in a low stress setting, which is defined as requiring no fast-paced production requirements such as maintaining high rates of repetitive manual activities or working on fast paced assembly lines; no more than occasional changes in work routine or work setting, and only occasional simple decision making; work should not require greater than occasional interaction with supervisors or co-workers, and no interaction with the general public, as a requirement of the job.

R. 26, 26–30. At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. R. 30. Then, at step five, the ALJ concluded that Plaintiff is capable of performing other jobs in the national economy that exist in significant numbers. R. 30–31. Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. R. 31.

## V. DISCUSSION

### A. Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "'such relevant evidence as a reasonable mind might accept to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the United States Court of Appeals for the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citation omitted).

### B. Contentions of the Parties

In her motion for summary judgment, Plaintiff contends that the ALJ's decision is not supported by substantial evidence for two reasons. See generally Br. Supp. Pl.'s

6

Mot. Summ. J., ECF No. 11. First, Plaintiff argues that the ALJ erroneously concluded that Plaintiff was exaggerating her symptoms and voluntarily portraying herself in a negative manner. Id. at 8–11. Second, Plaintiff argues that the ALJ erroneously applied the law by rejecting every medical opinion favorable to Plaintiff without sufficient explanation. Id. at 12–15. In doing so, Plaintiff insists that the ALJ substituted her opinion for that of Morgan D. Morgan, M.A., and ignored the consistencies between the various medical opinions favorable to Plaintiff. Id. Based on these alleged errors, Plaintiff asks this Court to remand her claim for calculation of benefits or, in the alternative, for further proceedings. ECF No. 11 at 15.

Conversely, the Commissioner argues that the ALJ's decision is supported by substantial evidence. See generally Def.'s Br. Supp. Mot. Summ. J, ECF No. 15. Addressing Plaintiff's arguments for summary judgment, the Commissioner avers that the ALJ correctly concluded that Plaintiff was exaggerating her symptoms and appropriately weighed the medical opinions of record. Id. at 5–9. Accordingly, the Commissioner requests this Court to grant her summary judgment and affirm the ALJ's decision. Id. at 9–10. The undersigned addresses each argument, in turn, below.

**C.     The ALJ's Decision is Supported by Substantial Evidence**

    **1. Plaintiff's Statements About the Intensity, Persistence, and Limiting Effects of Her Symptoms Were Not Entirely Credible**

First, Plaintiff's argues that the ALJ erroneously concluded that Plaintiff was exaggerating her symptoms. ECF No. 11 at 8–11. In support, Plaintiff argues that the ALJ's erroneous conclusion is evidenced, at least in part, by the bias that the ALJ allegedly displayed during the administrative hearing. Id. at 8–10.

"When analyzing claims of bias against an ALJ, the Court must start with two

7

presumptions: (1) that the ALJ is not biased and (2) the ALJ exercises his 'decision-making authority with honesty and integrity.'" Cloud v. Berryhill, No. 3:17–CV–35, 2017 WL 7101266, at *10 (N.D. W. Va. Oct. 17, 2017) (quoting Sutphin v. Astrue, No. 3:07cv171, 2009 WL 103585, at *21 (N.D. W. Va. Jan. 14, 2009)), adopted by 2018 WL 606139 (N.D. W. Va. Jan. 29, 2018). "That said, 'an ALJ cannot conduct a hearing if he is prejudiced or partial with respect to any party or has an interest in the matter.'" Id. (cleaned up) (quoting Monseau v. Astrue, No. 5:09CV45, 2010 WL 1286200, at *3 (N.D. W. Va. Mar. 29, 2010)). "To disqualify an ALJ, the party making the assertion must show actual bias, not just an 'appearance of impropriety.'" Id. (citing Schrader v. Astrue, No. 3:12–CV–54, 2013 WL 1192315, at *4 (N.D. W. Va. Mar. 22, 2013)); see also Schweiker v. McClure, 456 U.S. 188, 196 (1982) ("[T]he burden of establishing a disqualifying interest rests on the party making the assertion."); Bunnell v. Barnhart, 336 F.3d 1112, 1115 (9th Cir. 2003) ("[A]ctual bias must be shown to disqualify an administrative law judge."); Monseau, 2010 WL 1286200, at *3 ("The recusal standard for ALJs is a showing of actual bias." (citation omitted)).

After carefully reviewing the record, there is no evidence to suggest an appearance of impropriety, let alone actual bias. To start, there is no evidence that the ALJ appeared impartial or was actually biased when questioning Plaintiff about her general background. Although Plaintiff claims that the ALJ verbally assaulted Plaintiff and her counsel, the undersigned's review is limited to the transcript of the administrative hearing. See Cloud, 2017 WL 7101266, at *11. And there is nothing in the transcript to support the allegation that the ALJ engaged in a verbal assault of Plaintiff or her counsel. R. 37–85. Rather, Plaintiff primarily takes issue with the ALJ's

8

statements that she was not "buying" it. ECF No. 11 at 8–10. Those statements, Plaintiff insists, show that the ALJ already determined the outcome of Plaintiff's claim for DIB and SSI. Id. That is simply not so.

It is clear from the transcript that the ALJ was referring to Plaintiff's histrionics, not her claim for DIB or SSI. R. 53–55. Although the ALJ's frustration with Plaintiff's histrionics may have been inappropriate, that frustration alone is insufficient to support a claim of actual bias. See Wells v. Apfel, No. 99-5548, 2000 WL 1562845, at *5 (6th Cir. Oct. 12, 2000) (holding ALJ's frustration and emotional displays were insufficient to demonstrate actual bias); Collier v. Comm'r of Soc. Sec., 108 F. App'x 358, 364 (6th Cir. 2004) (holding ALJ's unnecessary and inappropriate comments were insufficient to demonstrate actual bias). Indeed, despite the ALJ's frustration, here, she repeatedly stressed the importance of Plaintiff being able to answer questions and present her case during that hearing. Id. To ensure that that happened, the ALJ suggested a brief recess to allow Plaintiff the opportunity to compose herself and even mentioned the possibility of rescheduling the hearing to a later date. R. 55. Tellingly, after the recess, Plaintiff did not have any trouble proceeding through the rest of the hearing. R. 56–85. More importantly, there is no evidence to suggest that there was an appearance of impropriety throughout the remainder of the hearing. Accordingly, the undersigned readily concludes that the ALJ was not biased.

Now, the undersigned must determine whether the ALJ erroneously concluded that Plaintiff was exaggerating her symptoms.

Generally, there is a five-step process for evaluating whether a claimant is disabled within the meaning of the Social Security Act. See 20 C.F.R. § 404.1520(a)(4).

Here, Plaintiff takes issue with the ALJ's credibility assessment conducted between steps three and four of that process. See id. To determine whether a claimant has the residual functional capacity ("RFC") to perform other work, the ALJ is bound by a two-step process. See Criss v. Comm'r of Soc. Sec., No. 5:16CV86, 2017 WL 2730647, at *3 (N.D. W. Va. June 26, 2017) (citing Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996)).

> First, the ALJ must expressly consider whether the claimant has demonstrated, through objective medical evidence, that a medical impairment exists that is capable of causing the degree and type of pain alleged. Second, the ALJ must consider the credibility of the claimant's subjective allegations of pain in light of the entire record.

Id. (citations omitted).

The ALJ's "determination . . . must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be <u>sufficiently specific</u> to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p (emphasis added). Because the ALJ has the opportunity to observe the demeanor of the claimant, the ALJ's observations concerning the claimant's credibility are given great weight. Shively, 739 F.2d at 989–90. This Court has determined that "[a]n ALJ's credibility determinations are 'virtually unreviewable' by this Court." Ryan v. Astrue, No. 5:09CV55, 2011 WL 541125, at *3 (N.D. W. Va. Feb. 8, 2011). "If the ALJ meets . . . her basic duty of explanation, then an ALJ's credibility determination will be reversed <u>only</u> if the claimant can show that it was patently wrong." Criss, 2017 WL 2730647, at *3 (emphasis added) (cleaned up).

Plaintiff challenges only the ALJ's conclusion that Plaintiff's subjective complaints

10

of pain are not entirely credible. ECF No. 11 at 10–11. In support, Plaintiff insists that no evidence of record indicates that Plaintiff was exaggerating her symptoms or that her presentations were voluntary and self-motivated because she was not diagnosed with malingering. Id. at 10. But the ALJ does not determine Plaintiff's credibility based on medical evidence alone, nor is that determination dictated by a diagnosis of malingering (or lack thereof). Instead, the ALJ must make her credibility determination based on her observations at the administrative hearing and compare Plaintiff's subjective complaints of pain against the medical evidence of record. In that regard, it is clear that the ALJ's credibility determination is sufficiently specific and not patently wrong. Specifically, in no less than four pages, the ALJ outlined Plaintiff's treatment, which was sporadic and often influenced by a pattern of exaggeration. R. 26–30. For example, Ms. Morgan described Plaintiff's behavior as "dramatic" and noted that she was "less than forthright." R. 28, 429. Further, the ALJ explained that Plaintiff is more capable than she asserts because she has cared for her grandmother and continues to care for her son, for whom she serves as his representative payee for his own SSI. R. 28. This credibility determination is further supported by the ALJ's determination of Plaintiff's difficulties with daily living, social functioning, and concentration, persistence, or pace. R. 24–25.

In short, the ALJ's credibility determination is sufficiently specific and not patently wrong. Accordingly, the undersigned finds no error.

### 2. The ALJ Appropriately Considered and Weighed All of the Medical Opinion Evidence of Record

Second, Plaintiff argues that the ALJ erroneously rejected all of the medical evidence favorable to Plaintiff without explanation or support. ECF No. 11 at 12–15. In

support, Plaintiff insists that the ALJ erred by ignoring the consistency between the medical opinions that were favorable to Plaintiff. Id.

But this argument is based on a fundamental misunderstanding of the consistency prong of 20 C.F.R. § 404.1527(c). That regulation states that "the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." Id. § 404.1527(c)(4) (emphasis added). "In other words, the consistency prong requires the ALJ to compare a medical opinion against the record as a whole to determine whether that medical opinion is consistent with all of the evidence of record." Simmons v. Berryhill, No. 5:17–CV–25, 2017 WL 8777460, at *8 (N.D. W. Va. Dec. 22, 2017) (citing 20 C.F.R. § 404.1527(c)(4)), adopted by 2018 WL 369695 (N.D. W. Va. Jan. 11, 2018). "The consistency prong does not require the ALJ to compare a medical opinion with other medical opinions alone." Id. (emphasis in original). "Of course, if medical opinions are generally consistent with one another, they may too be consistent with the record as a whole, but not necessarily so; medical opinions may [] be consistent with one another, but also inconsistent with the record as a whole." Id. "[I]t is the responsibility of the Commissioner, not the . . . court, to review the case, make findings of fact, and resolve conflicts of evidence." Dixon v. Chater, No. 96-1259, 1997 WL 22237, at *3 (4th Cir. Jan. 22, 1997) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)).

In that regard, an ALJ must "weigh and evaluate every medical opinion in the record." Monroe v. Comm'r of Soc. Sec., No. 1:14CV48, 2015 WL 4477712, at *7 (N.D. W. Va. July 22, 2015). "While the testimony of a treating physician is often accorded greater weight, this 'treating physician rule . . . does not require that the treating

physician's testimony be given controlling weight." Criss, 2017 WL 2730647, at *3 (cleaned up) (quoting Anderson v. Comm'r of Soc. Sec., 127 Fed. App'x 96, 97 (4th Cir. 2005)). "If a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, then it should be accorded significantly less weight." Anderson, 127 Fed. App'x at 97 (cleaned up). This evaluation requires the ALJ "to go through the exercise of carefully balancing the evidence, assigning weights to the competing opinions . . . and explaining the rationale for doing so." Smith v. Barnhart, 395 F. Supp. 2d 298, 307 (E.D.N.C. 2005). "That careful balancing necessarily requires that the ALJ explain why the 'medical evidence in the record supports the opinions or how the opinions are consistent with the medical evidence.'" Id. (quoting Buchanan v. Colvin, No. 1:14cv209, 2016 WL 485339, at *4 (W.D.N.C. Jan. 19, 2016)).

Here, the ALJ did just that. She reviewed the opinions of James Abel, M.D., Ms. Morgan, and Peggy Wolfe, M.A. P.L.C., and compared them against the record as a whole. R. 26–30. Based on that comparison, the ALJ concluded that those opinions should be given less weight because there is persuasive evidence to the contrary. Specifically, the ALJ discounted Ms. Morgan's consultative evaluation because Plaintiff was "dramatic" and less than forthright.[1] R. 28. The ALJ discounted Dr. Abel's opinion because his treatment was sporadic and his own records contradicted his claim that Plaintiff was in "full treatment compliance."[2] R. 28–29. The ALJ discounted Mr. Wolfe's

---

[1] Plaintiff's argument that the ALJ substituted her opinion for that of Ms. Morgan is unavailing. The ALJ did not ignore evidence favorable to Plaintiff; the ALJ methodically discussed all the relevant evidence of record and explained which medical opinions were entitled to little weight and why. And unlike in Forquer v. Colvin, No. 1:15CV57, 2016 WL 4250364 (N.D. W. Va. Aug. 11, 2016), here it is clear what evidence the ALJ relied on.

[2] Plaintiff makes two arguments in response: First, Plaintiff claims that the ALJ was disingenuous to

13

opinion because it "was based on only three counseling sessions and does not meaningfully address [Plaintiff's] functioning over a sustained period . . . ." R. 29. And lastly, the ALJ discounted the opinions of Plaintiff's mother, Lola Este, and her non-lawyer advocate, Diane Miller, because they are not medical opinions or correlate to the evidence of record. R. 29. This is plainly within the ALJ's discretion, and the undersigned will not disturb it simply because Plaintiff disagrees with the result." Simmons, 2017 WL 8777460, at *8 (citing Mastro, 270 F.3d at 178 ("[T]he ALJ holds [the] discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."); Craig, 76 F.3d at 589 ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].")).

In sum, the ALJ satisfied her basic duty of explanation, and her decision to give little weight to the opinions of Dr. Abel, Ms. Morgan, and Ms. Wolfe is supported by substantial evidence. Accordingly, the undersigned finds no error.

## VI.   RECOMMENDATION

For the foregoing reasons, I find that the Commissioner's decision denying Plaintiff's claim for DIB and SSI is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No. 10] be **DENIED**,

---

discount Dr. Abel's opinion based on their inconsistent treating relationship. ECF No. 11 at 13. But significant gaps in a treatment relationship can certainly serve as a valid basis for discounting a medical opinion, just as it was used here. Second, Plaintiff claims that the ALJ misinterpreted Dr. Abel's statement, which reads in full: "Despite full treatment compliance, medication management along with intensive individual and group therapy continue to be ineffective." R. 483. Plaintiff insists that Dr. Abel's statement was not stating that Plaintiff was always compliant with her treatment. ECF No. 11 at 13. Rather, she says that Dr. Abel was merely stating that she was compliant with her treatment "at that time." Id. Although that may well have been Dr. Abel's intention, the undersigned cannot expect the ALJ to base her decision on words that simply aren't there.

Defendant's Motion for Summary Judgment [ECF No. 14] be **GRANTED**, the decision of the Commissioner be **AFFIRMED** and this case be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file written objections identifying the portions of the Report and Recommendation to which objections are made and the basis for such objections with the Clerk of the Court. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845-48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

Respectfully submitted this 24th day of April, 2018.

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE