IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LISHA M. WALKER,

       Plaintiff,

v.               //   CIVIL ACTION NO. 1:17CV63
                           (Judge Keeley)


NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.


MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 20]

On April 21, 2017, the plaintiff, Lisha M. Walker ("Walker"), filed a complaint seeking review of an adverse decision of the defendant, Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner") (Dkt. No. 1). Pending are Walker's objections to the Report and Recommendation ("R&R") filed by the Honorable Robert W. Trumble, United States Magistrate Judge, recommending that the Court affirm the Commissioner (Dkt. Nos. 20; 21). For the following reasons, the Court **REJECTS** the R&R and **REVERSES** and **REMANDS** the Commissioner's decision.

I. BACKGROUND

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Walker filed claims for disability insurance benefits ("DIB") and supplemental security

income ("SSI") in July 2013 (R. 243-50).[1] At the time, she alleged a disability onset date of February 8, 2008 (R. 243), but later amended that date to February 1, 2012 (R. 43-44). Walker's most recent relevant work was as a hotel front desk clerk from 2000 to 2008 (R. 63, 266). Walker alleged that a number of limitations prevented her from working, including major depressive disorder, anxiety, panic disorder, obsessive compulsive disorder, personality disorders, attention deficit disorder, narcolepsy, fibromyalgia, chronic fatigue, and migraine headaches (R. 264).[2]

The Commissioner denied Walker's claim at both the initial and reconsideration levels (R. 180, 192). At Walker's request, Administrative Law Judge Nikki Hall ("the ALJ") held a hearing on January 5, 2016 (R. 37). The ALJ denied Walker's claim in a written decision on March 14, 2016 (R. 20-31). Walker appealed the ALJ's decision to the Appeals Council, but it declined review on February

---

[1] Throughout this Memorandum Opinion and Order, the Court cites the administrative record (Dkt. No. 7) by reference to the pagination as assigned by the Social Security Administration.

[2] This is Walker's second application for DIB and SSI. She first applied for benefits in January 2009, alleging an onset date of February 8, 2008. By decision dated November 8, 2010, an administrative law judge found that, although Walker had severe physical and mental impairments, she was not disabled (R. 89-100).

21, 2017, thus rendering the ALJ's decision the final decision of the Commissioner for purposes of appeal (R. 1).

Thereafter, on April 21, 2017, Walker filed suit in this Court, seeking reversal of the Commissioner's final decision (Dkt. No. 1). In her complaint, Walker argued that the ALJ's decision "is neither supported by substantial evidence nor based upon a correct application of the law." Id. at 2. More particularly, in her motion for summary judgment, Walker argued that the ALJ improperly concluded that she "was exaggerating her symptoms and voluntarily portraying herself in a negative manner," and that the ALJ improperly "rejected every medical opinion favorable to her without providing sufficient explanation or support" (Dkt. 11 at 1).

Pursuant to 28 U.S.C. § 636 and the local rules, the Court referred the case to Magistrate Judge Trumble for initial review. In his R&R, the magistrate judge rejected Walker's contentions (Dkt. No. 20). First, he found substantial evidence to support the ALJ's determination that Walker was not entirely credible. Id. at 20. Second, he reasoned that, in her decision, the ALJ satisfied her duty to sufficiently explain the weight given to each medical opinion. Id. at 14. Walker filed timely objections to the R&R, again arguing that the ALJ impermissibly had substituted her own opinion for that of the medical providers (Dkt. No. 21).

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 20]**

## II. STANDARDS OF REVIEW

### A.    The Magistrate Judge's R&R

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court must review de novo any portion of the magistrate judge's recommendation to which objection is timely made. The Court, however, will uphold those portions of the R&R to which no objection is made unless they are "clearly erroneous." See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). Because Walker filed objections to the R&R (Dkt. No. 21), this Court will review de novo all those portions of the R&R to which she has objected.

### B.    The ALJ's Decision

The question presented is not whether Walker is disabled. See Mayer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Judicial review of the Commissioner's final decision is limited to determining whether the ALJ's findings are supported by substantial evidence and whether she correctly applied the law. See 42 U.S.C. § 405(g); Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). It is the duty of the ALJ to make findings of fact and resolve disputed evidence. King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979).

## MEMORANDUM OPINION AND ORDER REJECTING
## REPORT AND RECOMMENDATION [DKT. NO. 20]

Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation omitted)). "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 20 F.3d 171, 176 (4th Cir. 2001) (alteration in original) (quoting Laws v. Celbrezze, 368 F.3d 585, 589 (1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. (alteration in original) (quoting Craig, 76 F.3d at 589). That "two inconsistent conclusions" may be drawn "from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." Sec'y of Labor v. Mut. Mining, Inc., 80 F.3d 110, 113 (4th Cir. 1996) (quoting Conolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966) (internal quotation omitted)).

Nonetheless, "[a]n ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning. An ALJ's failure to consider an entire line of evidence falls below the

**MEMORANDUM OPINION AND ORDER REJECTING**
**REPORT AND RECOMMENDATION [DKT. NO. 20]**

minimal level . . . ." <u>Diaz v. Chater</u>, 55 F.3d 300, 307 (7th Cir.
1995) (internal citation omitted). The Court must be able to "track
the ALJ's reasoning and be assured that the ALJ considered the
important evidence." <u>Id.</u> at 308 (quoting <u>Green v. Shalala</u>, 51 F.3d
96, 101 (7th Cir. 1995)).

### III. DISCUSSION

As part of its review of the R&R, the Court incorporates by
reference the parties' stipulations of fact (Dkt. Nos. 18; 19) and
Magistrate Judge Trumble's articulation of the Commissioner's five-
step evaluation process (Dkt. No. 20 at 3-5).

**A.    Credibility Determination**

Walker first contends that the ALJ improperly decided that
"[h]er allegations are not entirely credible given the apparently
voluntary and self-motivated nature of her clinical presentations"
(Dkt. No. 11 at 8-11). For the following reasons, the Court
concludes that the ALJ did not support her credibility
determination with substantial evidence.

**1.    Applicable Law**

An ALJ uses a two-step process when determining whether a
person is disabled by pain or other symptoms. <u>Craig</u>, 76 F.3d at
594. In the first step, objective medical evidence must exist

6

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 20]**

demonstrating a medical impairment resulting from anatomical, physiological, or psychological abnormalities that "could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting 20 C.F.R. §§ 404.1529(b), 416.929(b)(2011)); see also Social Security Ruling 96-7p, 1996 WL 374186, at *2 (July 2, 1996) [hereinafter SSR 96-7p].

After the claimant makes this "threshold showing," the ALJ must evaluate the claimant's credibility regarding her subjective symptoms. SSR 96-7p, 1996 WL 374186, at *2. In this second step, the ALJ assesses the intensity, persistence, and limiting effects of the symptoms "to determine the extent to which [they] limit the individual's ability to do basic work activities." Id. If the claimant's statements about the intensity, persistence, or functionally limiting effects of symptoms are unsubstantiated by objective medical evidence, the ALJ must "make a finding on the credibility of those statements based on the consideration of the entire case record," including the medical signs and laboratory findings, the claimant's statements, statements by medical professionals, and any other relevant evidence. Id.

In addition to objective medical evidence, the ALJ must consider the following factors regarding credibility:

1.   The individual's daily activities;

MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 20]

2.   The location, duration, frequency, and intensity of
     the individual's pain or other symptoms;

3.   Factors   that   precipitate   and   aggravate   the
     symptoms;

4.   The type, dosage, effectiveness, and side effects
     of any medication the individual takes or has taken
     to alleviate pain or other symptoms;

5.   Treatment, other than medication, the individual
     receives or has received for relief of pain or
     other symptoms;

6.   Any measures other than treatment the individual
     uses or has used to relieve pain or other symptoms
     (e.g., lying flat on his or her back, standing for
     15 to 20 minutes every hour, or sleeping on a
     board); and

7.   Any other factors concerning the individual's
     functional limitations and restrictions due to pain
     or other symptoms.

Id. at *3.

Although the ALJ need not document specific findings as to

each factor, Wolfe v. Colvin, No. 3:14CV4, 2015 WL 401013, at *4

(N.D.W.Va. Jan. 28, 2015) (Groh, J.), her decision "must contain

specific reasons for the finding on credibility, supported by

evidence in the case record, and must be sufficiently specific to

make clear to the individual and to any subsequent reviewers the

weight the adjudicator gave to the individual's statements and the

reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2.

MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 20]

An ALJ's credibility determinations are "virtually unreviewable." <u>Ryan v. Astrue</u>, No. 5:09CV55, 2011 WL 541125, at *3 (N.D.W.Va. Feb. 8, 2011) (Stamp, J.) (quoting <u>Darvishian v. Geren</u>, No. 08-1672, 2010 WL 5129870, at *9 (4th Cir. 2010)). Because it is the ALJ who observed the claimant's demeanor during the administrative hearing, her determination regarding credibility is to be given great weight. <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (7th Cir. 1997) (internal citations omitted).

**2. Analysis**

Although credibility determinations are due substantial deference by this Court, the ALJ in this case did not support her determination with substantial evidence. Her reasoning does not permit a reasonable mind to accept the conclusion that Walker is not credible. <u>Hays</u>, 907 F.2d at 1456. The ALJ reasoned that, although Walker's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," she was not entirely credible due to her "inconsistent course of mental health treatment," the "apparently voluntary" nature of her clinical presentations, and treatment notes regarding certain of her activities (R. 26-28). The record reflects deficiencies in the ALJ's reasoning with regard to each of these categories.

MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 20]

*First*, the ALJ noted that Walker "has had an inconsistent course of mental health treatment" (R. 28). She further reasoned that, "[d]espite the claimant's various explanations, her pattern of noncompliance both suggests that her conditions are not as severe as alleged, and also that they are less limiting when she actually attends her therapy as prescribed" (R. 29). But, as other courts have noted, "faulting a person with diagnosed mental illness . . . for failing to pursue mental health treatment is a questionable practice." Simpson v. Colvin, No. 6:15-CV-06244 EAW, 2016 WL 4491628, at *15 (W.D.N.Y. Aug. 25, 2016) (quoting McGregor v. Astrue, 993 F. Supp. 2d 130, 143 (N.D.N.Y. 2012)). The ALJ thus erred when she used Walker's inconsistent and noncompliant treatment history to support the conclusion that her limitations are not as severe as alleged.

*Second*, the ALJ reasoned that Walker displayed a "pattern of exaggeration, both in her claims" and "to treatment providers" (R. 27). According to the ALJ, Walker's "allegations are not entirely credible given the apparently voluntary and self-motivated nature of her clinical presentations" (R. 27). The ALJ's conclusion, however, results from a misapprehension of the evidence.

**MEMORANDUM OPINION AND ORDER REJECTING**
**REPORT AND RECOMMENDATION [DKT. NO. 20]**

For instance, the following is the ALJ's discussion of a neuropsychological assessment that corresponds with the alleged onset of Walker's disability:

> In May and June 2012, she was admitted for day treatment and attended early group sessions; she then stopped attending and did not respond to attempts to reschedule or continue her treatment. At the same time, the neuropsychological assessment discussed above revealed the presence of notable anxiety and likely personality disorders, but also a lack of effort or motivation in the clinical setting. The evidence strongly indicated that "[s]econdary gain issues, such as avoidance of responsibility in her daily life, as well as social security disability, may play a role in her presentation and maintenance of her symptoms."

(R. 27).

The assessment conducted by Dr. Ekaterina Keifer, however, paints a different picture:

> Reasons for poor effort in this patient likely include a desire to demonstrate the degree of her emotional distress, which she did in an exaggerated and dramatic fashion that is consistent with the presence of an underlying personality disorder. Secondary gain issues, such as avoidance of responsibilities in daily life, as well as social security disability, may play a role in her presentation and maintenance of her symptoms. From a diagnostic perspective, the patient has significant symptoms of generalized anxiety and appears to use compulsive behavior as a coping strategy. . . . <u>The long-standing immutable nature of her difficulties, along with her dramatic presentation provide support for the presence of a personality disorder.</u>

(R. 331) (emphasis added). Dr. Keifer did not separately discuss "likely personality disorders" and "a lack of effort or motivation"

(R. 27). Context makes clear that Dr. Keifer associated "poor effort . . . with the presence of an underlying personality disorder" (R. 331). In other words, she concluded that Walker exhibited poor effort in a manner consistent with personality disorders, not apart from them.

Moreover, nowhere in her assessment does Dr. Keifer reason that the evidence <u>strongly</u> indicates the presence of secondary gain issues. The evidence actually suggests only that secondary gain issues "may" be a factor that contributes to Walker's presentation (R. 331). And, to make matters worse, the ALJ relied on her misunderstanding of Dr. Keifer's assessment to completely dismiss a consultative evaluation that concluded Walker was "severely deficient based on her presentation" (R. 28).

Contrary to the ALJ's conclusion that Walker's presentation is exaggerated and voluntary (R. 27), no treatment provider or medical professional of record has suggested that Walker is malingering. In fact, an evaluation by Dr. Tony Goudy indicated that the results were "fundamentally inconsistent with an individual trying to malinger" (R. 492). "[T]he ALJ simply does not possess the competency to substitute [her] views on the severity of plaintiff's psychiatric problems for that of a trained professional." <u>Grimmett v. Heckler</u>, 607 F. Supp. 502, 503 (S.D.W.Va. 1985) (citing

MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 20]

Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974); McLain v.

Schweiker, 715 F.2d 866, 869 (4th Cir. 1983)).[3]

*Third*, the ALJ pointed to "physical treatment notes,"

reasoning that they did "not suggest the level of symptoms or

deficits she allege[d]" (R. 28). For instance, the ALJ reasoned

that, in one note, Walker was merely noted to be "anxious" on June

18, 2014, but was "well-groomed [with] good eye contact." In

addition, she has cared for her grandmother and disabled son, for

whom she acts as representative payee (R. 28).

The ALJ erred in this regard by selectively relying on

treatment notes favorable to her conclusion. Diaz, 55 F.3d at 307.

For example, the same provider who noted Walker was "anxious," had

previously noted that Walker was "anxious, confused" and exhibited

"flight of ideas" thought patterns (R. 413-14). The provider also

indicated that Walker should continue mental health treatment

because she was "[v]ery emotional and cryi[n]g alot with son

Diagnosed with Aspergers Syndrome She is very nervous and not

leaving the house much" (R. 413). "Mental illness waxes and wanes

---

[3] The subjective nature of the ALJ's approach to mental health
evidence is illustrated by her actions at the hearing. When Walker
exhibited documented symptoms of her mental illness, the ALJ told
Walker "to get a hold of [herself]" and that she was "wasting [her]
time by losing control" (R. 53-54). The ALJ also indicated on
several occasions that she was "not buying it" (R. 54-55).

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 20]**

over time . . . ." <u>Coldren v. Astrue</u>, No. 10-CV-04080, 2011 WL 4352500, at *16 (N.D. Iowa Sept. 15, 2011). A few isolated treatment notes inconsistent with debilitating mental illness do not provide substantial evidence in support of an adverse credibility finding.

In addition, the ALJ relied on Walker's care for her disabled son without addressing conflicting, non-medical evidence that her participation in Individual Educational Plan meetings "was often not productive" because "she would become very upset for no reason," and "would cry and appear to become overwhelmed" (R. 29, 317). It was inappropriate for the ALJ to bolster her conclusion by presenting an incomplete narrative of the documentary evidence.

In sum, the ALJ's credibility determination is not supported by substantial evidence because she improperly relied on treatment noncompliance, misinterpreted the relevant medical evidence, and selectively discussed components of the record that supported her conclusion. On remand, it will be incumbent upon the ALJ to assess Walker's subjective complaints through a more fulsome and inclusive analysis of the record evidence.

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 20]**

**B.   Medical Opinions**

Second, Walker contends that the ALJ rejected favorable medical opinions without a sufficient explanation (Dkt. No. 11 at 12-15). Here too the record supports the conclusion that the ALJ did not support her reasoning and conclusions with substantial evidence.

**1.   Applicable Law**

If a claimant's severe impairments neither meet nor equal the severity of a listed impairment, as was the undisputed step-three determination in this case, the ALJ must then assess the claimant's residual functional capacity ("RFC").[4] 20 C.F.R. § 404.1520(e). An ALJ is to determine the claimant's RFC "based on all the relevant medical and other evidence," id., including medical opinions. Id. § 404.1527(b). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity" of a claimant's "impairment(s), including [her] symptoms,

---

[4] A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545. It is also described as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8p, 61 Fed. Reg. 34,474, 34,478 (July 2, 1996) [hereinafter SSR 96-8p].

**MEMORANDUM OPINION AND ORDER REJECTING**
**REPORT AND RECOMMENDATION [DKT. NO. 20]**

diagnosis, or prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions. Id. § 404.1527(a)(1).

A treating physician's opinion is entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is consistent with the other evidence of record. Id. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). When a medical opinion is not entitled to controlling weight, the ALJ should consider the following factors in deciding what weight to assign: (1) the examining relationship; (2) the length, frequency, nature, and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20 C.F.R. § 404.1527(c). Ultimate conclusions as to whether a claimant is "disabled" or "unable to work" are categorically reserved to the Commissioner. Id. § 404.1527(d)(1).

The Commissioner abides by the following guidance:

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).

SSR 96-8p, 61 Fed. Reg. at 34,478. This guidance obligates the ALJ to provide more than mere "conclusory analysis" when assigning

16

weight to medical opinions. <u>Monroe v. Colvin</u>, 826 F.3d 176, 191 (4th Cir. 2016); <u>see also</u> SSR 96-8p, 61 Fed. Reg. at 34,478 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

Although the ALJ may decline to give an opinion weight, it is for the Court to determine whether substantial evidence supports her decision. <u>See</u> <u>Russell v. Barnhart</u>, 58 F. App'x 25, 29–30 (4th Cir. 2003). The ALJ's determination as to the weight to be assigned to a medical opinion "generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion." <u>Dunn v. Colvin</u>, 607 F. App'x 264, 267 (4th Cir. 2015) (internal citations omitted). The ALJ must reach a conclusion that appears rational. <u>Id.</u> at 266; <u>see also</u> <u>Schmidt v. Sullivan</u>, 914 F.2d 117, 118 (7th Cir. 1990) (reasoning that an ALJ may not "succumb to the temptation to play doctor").

**2.  Analysis**

The ALJ erred by "fail[ing] to give a sufficient reason for the weight afforded" many of the medical opinions of record. <u>Dunn</u>, 607 F. App'x at 267. Most notably, the record contains an evaluation and psychiatric follow up notes by treating physician

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 20]**

Dr. James Abel from November 2012 through September 2015 (R. 365-76, 468-78). Throughout the records, Dr. Abel prescribed and adjusted medication, consistently noting his impressions that Walker was labile, tearful, distressed, and tangential, including his initial impression that Walker had "a near-psychotic like presentation" (R. 478).

In addition, prior to the hearing before the ALJ, Dr. Abel provided a medical source statement as follows:

> I have been involved with Lisha Walkers [sic] psychiatric care for roughly 8 years now. To be quite frank, Lisha is one of the more neurotic and dramatic patients I have ever cared for. My initial impressions of Lisha were that she was embellishing and even fabricating some of her symptoms for unclear objective. She appeared to covet the "sick role" while searching for personal validation through the theatrical expression of emotional distress and mental illness.
>
> However, as I got to know Lisha over time, I began to realize that she is in-fact severely mentally ill and completely dysfunctional socially and occupationally. Her presentation of hysteria, irrationality, paranoia, and helplessness has been consistent in every interaction I have had with her over the last 8 years. Without her mother's support, she would either be in a long term state facility or homeless. In the time I have known her she has received a tremendous amount [of] psychiatric care from multiple providers and has shown negligent improvement. Despite full treatment compliance, medication management along with intensive individual and group therapy continue to be ineffective.
>
> In my professional opinion, Lisha has a profound and disabling mental illness with genuine and consistent presentation. Her level of functioning is severely

**MEMORANDUM OPINION AND ORDER REJECTING**
**REPORT AND RECOMMENDATION [DKT. NO. 20]**

> impaired in personal, social, and occupational realms. I
> hope this is helpful in rendering a decision.

(R. 483). The ALJ gave this opinion "little weight," explaining:

> While he stated he had been involved in her care for
> eight years, the records as discussed above show a
> sporadic and inconsistent treatment relationship. His
> statements that the claimant is "completely dysfunctional
> socially and occupationally" are thus undermined
> considering he claims this is despite "full treatment
> compliance" in direct contradiction of his own records.
> Though Dr. Abel is a treating source, his statements were
> not persuasive.

(R. 28-29).

The ALJ relied on only one "specious inconsistency" in Dr.

Abel's statement, while simultaneously failing to discuss important

factors. Dunn, 607 F. App'x at 267. Although compliance definitely

is problematic for Walker, the ALJ erred when she rejected Dr.

Abel's opinion based only on his comment that Walker showed no

improvement "[d]espite full treatment compliance."[5] Relevant

precedent instructs that Dr. Abel's opinion is entitled to

controlling weight unless it is not "well-supported by medically

acceptable clinical and laboratory diagnostic techniques" or is

inconsistent with the other evidence of record. Id.

§ 404.1527(c)(2); Mastro, 270 F.3d at 178. Because the ALJ did not

---

[5] Indeed, on at least one occasion during Walker's inpatient
treatment, Dr. Abel noted that she was attending therapy and taking
her medications, but remained "very intense" (R. 369).

discuss these matters, she did not "build an accurate and logical bridge from the evidence to [her] conclusion" regarding Dr. Abel's opinion. Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

In addition, the ALJ provided insufficient explanations for the weight that she gave to other medical opinions of record. For instance, the only opinion to which she gave "great weight" was that of state agency mental health consultant Dr. Karl Hursey. She reasoned that his "opinion was most consistent with the treatment records and the overall clinical picture obtained by his objective review of the evidence" (R. 25). But such reasoning is far too conclusory. "Without more specific explanation of the ALJ's reasons for the" weight assigned to Dr. Hursey's opinion, the Court simply cannot conduct a "meaningful substantial-evidence review." Monroe, 826 F.3d at 189 (citing Radford, 734 F.3d at 295).

The record also contains a September 2013 consultative evaluation by Morgan Morgan, M.A. He noted, in part, that "[m]any aspects of [Walker's] presentation and statements indicate significant maladaptive personality features," and that Walker's "overall social functioning was deemed to be severely deficient, based upon her presentation" (R. 429-30). The ALJ gave "little weight" to this evaluation due mostly to her misinterpretation of the "secondary gain issues" acknowledged in Dr. Keifer's

assessment, as well as Walker's "generally inconsistent allegations and behavior." As discussed with regard to her credibility determination, the ALJ failed to support these conclusions with substantial evidence. They thus provide an insufficient basis upon which to disregard Mr. Morgan's evaluation.[6]

In sum, the ALJ did not support her discussion of the medical opinions with substantial evidence. Without having more "specific reasons" for the weight given by the ALJ, the Court's only option is to review the record in search of supportive evidence. This task, however, exceeds the scope of the Court's appellate review and is committed to the Commissioner. Jackson v. Colvin, No. 3:14cv24834, 2015 WL 5786802, at *2 (S.D.W. Va. Sept. 30, 2015) ("It is not the role of the courts to search for reasons . . . that were not furnished by the ALJ."). On remand, the ALJ must provide a "narrative discussion" regarding the weight given to each medical

---

[6] The Court further notes that the ALJ erroneously discredited the subjective testimony of Walker's mother and a "non-lawyer advocate who ha[d] assisted [Walker] in her interactions with her son's school" (R. 29-30). The ALJ may not disregard such assertions on the sole basis that the testimony is non-medical, but must explain why the testimony does not comport with the medical evidence. See Coldren v. Astrue, 2011 WL 4352500, at *15 (N.D. Iowa Sept. 15, 2011) (citing Smith v. Heckler, 735 F.2d 313, 317 (8th Cir. 1984)).

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 20]**

opinion, including a full analysis of the weight given to treating physician Dr. Abel's opinion.

**IV. CONCLUSION**

For the reasons discussed, the Court:

1) **REJECTS** the R&R (Dkt. No. 20);

2) **GRANTS** Walker's motion for summary judgment (Dkt. No. 10);

3) **DENIES** the Commissioner's motion for summary judgment (Dkt. No. 14);

4) **REVERSES** the Commissioner's decision under sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3); and

5) **REMANDS** this case to the Commissioner for further proceedings consistent with this Memorandum Opinion.[7]

It is so **ORDERED**.

---

[7] Although Walker requests that the Court remand for calculation of benefits, reversal without remand for rehearing is appropriate only if "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard." Rebrook v. Astrue, No. 1:09-CV-50, 2010 WL 2233672, at *33 (N.D.W.Va. May 14, 2010). Otherwise, district courts should "remand to give the Secretary an opportunity to apply the correct legal standard." Id. (quoting Breeden v. Weinberger, 493 F.2d 1002, 1011-12 (4th Cir. 1974)). Here, because the ALJ's decision is most notable for its failure to analyze the record, the Court concludes that the Commissioner should be given an opportunity to support her decision with substantial evidence.

**MEMORANDUM OPINION AND ORDER REJECTING
REPORT AND RECOMMENDATION [DKT. NO. 20]**

The Court **DIRECTS** the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record, to enter a separate judgment order, and to strike this case from the Court's active docket.

DATED: August 20, 2018.

                                        /s/ Irene M. Keeley
                                        IRENE M. KEELEY
                                        UNITED STATES DISTRICT JUDGE